UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

VINCENT BROWN,

                                **Petitioner,**

    -against-

CITY OF NEW YORK, RICHARD A. BROWN
DISTRICT ATTORNEY OF QUEENS COUNTY,
WILLIAM HOGAN, THE CITY OF
PITTSFIELD, CHIEF OF POLICE MICHAEL
WYNN, DAVID F. CAPELESS DISTRICT
ATTORNEY OF BERKSHIRE COUNTY, and
JOHN DOE.

                                **Respondents.**

------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ JUN 26 2013 ★

BROOKLYN OFFICE

<u>MEMORANDUM & ORDER</u>

10-CV-5229 (ENV) (ALC)

VITALIANO, D.J.

     In 2010, plaintiff Vincent Brown was arrested by New York City Police Department ("NYPD") officers on charges relating to a domestic dispute. After the officers learned of an outstanding Massachusetts warrant seeking an individual with the identical name, social security number, and FBI number as Brown, the Queens County District Attorney moved against him as a fugitive from justice. Plaintiff was then detained for approximately 80 days awaiting extradition proceedings, but was then released after Massachusetts officials declined to pursue extradition. Brown now alleges that he was detained on account of mistaken identity, and sues various public defendants

1

in Massachusetts and New York under §§ 1981 and 1983; he also asserts various claims under New York law.

The City of Pittsfield, Pittsfield Police Chief Michael Wynn, and the and the Berkshire County District Attorney ("the Massachusetts defendants") now move under Rule 12(b)(2) to dismiss all claims against them for lack of personal jurisdiction. Sgt. William Hogan of the New York Police Department, the City of New York, and the Queens County District Attorney ("the New York defendants") move under Rule 12(b)(6) to dismiss all claims against them for failure to state a claim on which relief may be granted. For the reasons discussed below, all claims against the Massachusetts defendants are transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1406(a), and all claims against the New York defendants are dismissed.

## Background

The following facts are drawn from the complaint, the sworn declarations, and the exhibits attached to them. With respect to the jurisdictional challenge of the Massachusetts defendant, Brown has the burden to establish jurisdiction, but the record facts are construed in a light most favorable to the plaintiff.[1] *See Emerald Asset Advisors, LLC v. Schaffer,*

---

[1]  With regard to the New York defendants' Rule 12(b)(6) motion, "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the [plaintiff's] pleadings and matters of

895 F.Supp.2d 418, 429 (E.D.N.Y. 2012) (describing the record on a Rule 12(b)(2) motion); *Nasso v. Bio Reference Laboratories, Inc.*, 892 F.Supp.2d 439, 444 (E.D.N.Y. 2012) (describing the record on a Rule 12(b)(2) motion ).

Brown is a man of African-American ancestry who resides in Queens, New York. (Am. Compl. (Dkt. No. 12) ¶ 6). He was 43 years old at the time he filed his complaint. (*Id.*) In or around 2005, Brown was arrested in Virginia on an outstanding warrant issued in Massachusetts. (*Id.* ¶ 14). This warrant charged a Vincent Brown of Utica, New York with possession of cocaine with intent to distribute. The warrant was issued on March 6, 1997 by the Berkshire Superior Court. The Berkshire County District Attorney's Office ("Berkshire DA") entered the warrant in the National Crime Information Center ("NCIC") system on August 14, 2001. (DePaul Decl. (Dkt. No. 29), Exh. B at 2-3). The NCIC validation/entry stated that the Berkshire DA would extradite Brown, if detained there, from Maine, Vermont, New Hampshire, Rhode Island, Connecticut, or New York. (*Id.* at 2). Brown alleges that he was

---

which judicial notice may be taken are considered." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts are deemed true for the purposes of the motion. However, because the Massachusetts defendants' Rule12(b)(2) motion is" inherently a matter requiring the resolution of factual issues outside of the pleadings, . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." *Patel v. Patel*, 497 F.Supp.2d 419, 421 (E.D.N.Y. 2007) (internal quotations and citations omitted). *See* Standard of Review, *infra*.

"held in Virginia prison for months before Virginia and Massachusetts concluded he was not the same Vincent Brown from the warrant." (Am. Compl. ¶ 14).

On or about February 21, 2010 came the instant arrest.[2] Brown was detained on a domestic disturbance complaint.  (Id. ¶ 15). While Brown was in custody, Sgt. William Hogan learned, from an NCIC search, of the outstanding Massachusetts warrant. Sgt. Hogan then obtained a copy of the warrant via fax from the Pittsfield, Massachusetts Police Department, along with the NCIC validation/entry for the warrant. (*See* DePaul Decl., Exh. B at 2-3). The Massachusetts warrant included a physical description, name, date of birth, and Social Security number that matched plaintiff's. (*See id*; *see also id.*, Exh. F (providing plaintiff's date of birth and Social Security number)). Sgt. Hogan then proceeded to draft a criminal information in which he swore that he had matched Brown's FBI and Social Security numbers to those belonging to the Vincent Brown described in the warrant, and requested that the plaintiff be detained pending extradition proceedings. (*See id.*, Exh. F).

---

[2]   The documentary evidence suggests that the arrest actually occurred on or shortly before February 20, 2010, the date set forth in the criminal complaint charging Brown as a fugitive. (*See* DePaul Decl., Exh. C). The Court makes this observation merely for the sake of clarity; the precise date of Brown's arrest is immaterial to the Court's Order.

4

Based on Sgt. Hogan's information, and as authorized by CPLR § 570, the Queens County District Attorney ("Queens DA") commenced an action against Brown charging him as a fugitive from justice. (Am. Compl. ¶ 14). Plaintiff states that he protested repeatedly that he was not the same Vincent Brown for whom the warrant had been issued and refused to waive extradition proceedings. (Am. Compl. ¶ 16). Plaintiff remained in detention for 30 days, whereupon the Queens DA applied to hold him for another 60 days pending the commencement of extradition proceedings. The application sought the relief authorized by the statute establishing procedures for the processing of out-of-state detainer warrants. *See* CPLR 570.36 (permitting a 30-day detention for defendants awaiting extradition, which may be extended for an additional 60 days). Fifty days later, on May 11, 2010, the Berkshire DA notified the Queens DA that Massachusetts would not seek to extradite Brown, that the warrant would be recalled from the NCIC, and that the prosecution of the matter against Brown would be dropped. (*See* DePaul Decl., Exh. D). Brown was released the following day, having spent approximately 80 days in New York detention. (Am. Compl. at 16-17).

On November 20, 2010, Brown brought this lawsuit to recover damages on account of his detention. (*See* Orig. Compl. (Dkt. No. 1)). On May 26, 2011, he filed an amended complaint naming as defendants the City of New York,

5

Queens DA Richard A. Brown, Sgt. Hogan, the City of Pittsfield, Pittsfield Chief of Police Michael Wynn, Berkshire County DA David F. Capeless, and John Doe.[3] (*See* Am. Compl. at ¶¶ 7-13). Brown's first cause of action alleges violations of 42 U.S.C. §§ 1981 and 1983 against Sgt. Hogan for having unconstitutionally arrested and imprisoned him. (*Id.* ¶¶ 19-20). Brown also sues the Berkshire and Queens DAs under those statutes, asserting constitutional violations for wrongly detaining him, as well as for "*de facto* policies, practices, customs and usages that were a direct and proximate cause of unconstitutional conduct by Assistant District Attorneys and other staff members" and for "fail[ure] to properly train, supervise or discipline" these employees. (*Id.* ¶¶ 21-25).

Next, Brown interposes false arrest and imprisonment claims against Sgt. Hogan under New York law, (*id.* ¶¶ 27-28), as well as similar claims against the Queens and Berkshire DAs. (*Id.* ¶¶ 29-31). Brown also advances a cause of action against all defendants for negligent infliction of emotional harm, (*id.* ¶¶ 32-34), and a claim for *Monell* liability against the cities of New York and Pittsfield. (*Id.* ¶¶ 35-38). Finally, Brown asserts a cause of action against New York City, Pittsfield, and the Berkshire and Queens DAs for

---

[3]  Because all claims against John Doe are also brought against Sgt. Hogan, all subsequent references to Sgt. Hogan shall, for the purposes of these motions, implicitly include any and all unnamed defendants.

negligent hiring, screening, retention, supervision, and training of various employees allegedly responsible for constitutional violations. (*Id.* ¶¶ 39-42). As relief, Brown seeks compensatory and punitive damages. (*See* Am. Compl., Request for Relief).

The Massachusetts defendants[4] now move under Rule 12(b)(2) to dismiss all claims against them for lack of personal jurisdiction. The New York defendants move under Rule 12(b)(6) to dismiss all claims against them for failure to state a claim on which relief may be granted. Brown has formally opposed these motions.

## Standard of Review

### A. Lack of Personal Jurisdiction—Rule 12(b)(2)

On a motion to dismiss a for lack of personal jurisdiction, the plaintiff bears the burden of establishing the Court's jurisdiction over the defendants. "Unlike a motion to dismiss pursuant to Rule 12(b)(6), deciding a Rule 12(b)(2) motion necessarily requires resolution of factual matters outside the pleadings." *Zibiz Corp. v. FCN Tech. Solutions*, 777 F.Supp.2d 408, 416 (E.D.N.Y. 2011) (internal quotations omitted). Where, as here, the

---

[4]   In a joint brief, Chief Wynn and Pittsfield move to dismiss under Rule 12(b)(2) only, while the Berkshire DA moves in a separate brief under Rule 12(b)(2) and, in the alternative, Rule 12(b)(6). Because the Court concludes that it lacks personal jurisdiction over all of the Massachusetts defendants, it does not consider the Berkshire DA's 12(b)(6) arguments.

jurisdictional question is presented "on the pleadings and without discovery, the plaintiff need show only a *prima facie* case." *In re Stillwater Capital Partners Inc. Litigation*, 851 F.Supp.2d 556, 566 (S.D.N.Y. 2012) (internal quotations omitted). Plaintiffs "can make this showing through their own affidavits and supporting materials containing an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." *Id.* (internal quotations omitted).

Thus, on a Rule 12(b)(2) motion, while the Court may consider materials outside the pleadings, it must still credit plaintiffs' averments of jurisdictional fact (but not their conclusions) as true, and must construe all allegations in the light most favorable to the plaintiff, and notwithstanding a controverting presentation by the moving party. *Id.* at 566-67. "Nonetheless, where a defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiffs do not counter that evidence—the allegation may be deemed refuted." *Id.* at 567 (internal quotations omitted). In this case, the Court may therefore consider all the parties' factual assertions, declarations and attached exhibits for the purposes of determining personal jurisdiction, but shall construe the facts so established in a light most favorable to Brown.

B. Failure to State a Claim—Rule 12(b)(6)

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). To survive the motion, the complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To the extent there are disagreements or ambiguities of fact, the Court must construe all the facts in a light most favorable to the plaintiff and draw all reasonable inferences in his favor. *See Matson v. Bd. of Educ. of City School Dist. of N.Y.*, 631 F.3d 57, 72 (2d Cir. 2011).

However, the court need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Moreover, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). On the other hand, "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). All that is required is "a

9

plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.*

On a Rule 12(b)(6) motion, "a court may only consider [1] the pleading itself, [2] documents that are referenced in the complaint, [3] documents that the plaintiff relied on in bringing suit and that are either in the plaintiff' possession or that the plaintiff knew of when bringing suit, and [4] matters of which judicial notice may be taken." *Arrocha v. City Univ. of N.Y.*, 878 F.Supp.2d 364, 368 (E.D.N.Y. 2012) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) and *Int'l Audiotext Network, Inc. v. Am. Tel.& Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). In his complaint, Brown references a number of documents that are included in the record as defense exhibits. These include the Massachusetts warrant (DePaul Decl., Exh. B at 3), referenced at Am. Compl. ¶ 14; the criminal information filed by Sgt. Hogan (DePaul Decl., Exh. C), referenced at Am. Compl. ¶ 15; and the Notice of Claim that Brown filed with the Comptroller of New York City on August 3, 2010 (Depaul Decl., Exh. D), referenced at Am. Compl. ¶ 5. The Court may consider these documents as if they were part of the complaint itself when deciding the New York defendants' Rule 12(b)(6) motion.

Additionally, the Court may consider documents "integral" to the complaint, even if they are not referenced in or attached to the pleadings.

That is, the Court may consider "documents that the plaintiff[] either possessed or knew about and upon which [he] relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). Attached as Exhibit F to the New York defendants' DePaul declaration is a "Designation of Agent for Access to Sealed Records Pursuant to New York CPLR 160.50[1][d]," signed by Brown on August 3, 2010—the same day he filed his Notice of Claim with the New York City Comptroller. This document provides Michael A. Cardozo, Corporation Counsel of the City of New York, and attorney of record for the New York defendants, with access to sealed records regarding Brown's 2010 arrest. It is clear that Brown executed this document as a prerequisite to bringing suit.[5] As such, he was both aware of it and of necessity relied on it in his complaint. *Cf. Smart v. Goord*, 441 F.Supp.2d 631, 637 (S.D.N.Y. 2006) ("As exhaustion of administrative remedies is a prerequisite to bringing suit, an inmate plaintiff necessarily refers to and

_____

[5]  Plaintiffs claiming false arrest are regularly required to provide opposing counsel with access to sealed records relating to the arrest. *See, e.g., Palacio v. City of New York*, 489 F.Supp.2d 335, 339 (S.D.N.Y. 2007) (directing § 1983 plaintiff to execute form releasing sealed arrest records to defense counsel, since such records were "necessary to continue with this litigation"); *Cabble v. Rollieson*, No. 04-Civ-9413 (LTS) (FM), 2006 WL 464078, at *10 (S.D.N.Y. Feb. 27, 2006) (directing § 1983 plaintiff to execute § 160.50 releases to city defendants); Order, *Quaknine v. City of New York*, No. 09-Civ-2992 (NRB) (S.D.N.Y. Sept. 28, 2009) (dismissing false arrest claim against city on account of plaintiff's failure to execute § 160.50 release).

11

relies on documents exhibiting proof of exhaustion" in his § 1983 claim);

*Chmiel v. Potter*, No. 09–CV–555 (RJA), 2010 WL 5904384, at *7 (W.D.N.Y.

Dec. 7, 2010) (citing *Smart* and holding similarly). The Court may therefore

consider Exhibit F of the DePaul declaration on the New York defendants'

motion, as it is integral to the pleadings.

Discussion

A. The Massachusetts Defendants' Rule 12(b)(2) Motion

    i.   *Legal Framework for Personal Jurisdiction*

"District courts resolving issues of personal jurisdiction must engage in

a two-part analysis." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d

158, 165 (2d Cir. 2005) (internal quotations and ellipses omitted). First, the

court "must determine whether, under the laws of the forum state (New York

in this case), there is jurisdiction over the defendant." *Id.* (internal quotations

omitted). If jurisdiction is found lacking after the first step, the court must

dismiss the action. Otherwise, the court must next "determine whether an

exercise of jurisdiction under these laws is consistent with federal due process

requirements." *Id.* (internal quotations omitted).

With regard to non-domiciliaries, "New York Law on personal

jurisdiction is codified in CPLR §§ 301 and 302." *Universal Marine Med.*

*Supply, Inc. v. Lovecchio*, 8 F.Supp.2d 214, 218 (E.D.N.Y. 1998); *see also*

12

*Opticare Acquisition Corp. v. Castillo*, 25 A.D.3d 238, 242, 806 N.Y.S.2d 84, 88 (2d Dep't 2005) (finding that §§ 301 and 302 are the only two bases for establishing personal jurisdiction over non-resident litigants). Under § 301—the "general jurisdiction" statute—"the authority of the New York courts to exercise jurisdiction over a foreign [defendant] is based solely upon the fact that the defendant is engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Laufer v. Ostrow*, 55 N.Y.2d 305, 309-10, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 458 (1982) (internal quotations omitted). That is, the plaintiff must show that "the aggregate of the [defendant's] activities in the State [is] such that it may be said to be 'present' in the State 'not occasionally or casually, but with a fair measure of permanence and continuity,'" such that jurisdiction would accord with "'traditional notions of fair play and substantial justice.'" *Id.* at 310 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); other internal quotations omitted).

As empowered by § 302—New York's "long-arm statute"—a court may exercise personal jurisdiction over any non-domiciliary who

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

13

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

    (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

    (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

"In order to demonstrate that an individual is transacting business within the meaning of CPLR 302(a)(1), there must have been some purposeful activities within the State that would justify bringing the nondomiciliary defendant before the New York courts." *SPCA of Upstate N.Y., Inc. v Am. Working Collie Assn.*, 18 N.Y.3d 400, 404, 963 N.E.2d 1226, 1228, 940 N.Y.S.2d 525, 527 (2012) (internal quotations omitted). "Moreover, there must be some articulable nexus between the business transacted and the cause of action sued upon." *Id.* at 404 (internal quotations omitted). "Phrased differently, there must be a substantial relationship between the purposeful activities and the transaction out of which the cause of action arose." *Id.* (internal quotations omitted).

14

### ii.    The Court Lacks Personal Jurisdiction Over the Massachusetts Defendants Under New York Law

In his opposition brief, Brown makes no reference to § 301, nor does he argue that any of the Massachusetts defendants "engage in such a continuous and systematic course of doing business" in New York so as to have a virtual "presence" in the state, a requisite showing under § 301. *Laufer*, 55 N.Y.2d at 309-10. Rather, he argues for personal jurisdiction over the Massachusetts defendants solely on the basis of § 302. (*See* Pl.'s Opp. (Dkt. No. 32) at 8-10 (discussing application of New York's long-arm statute only)). Because Brown bears the burden of showing personal jurisdiction, the Court construes his silence on § 301 as a concession that there is no personal jurisdiction over the Massachusetts defendants on the basis of that statute.[6]

Brown fares no better with regard to § 302. To start, he makes no claim relying on the first, second, or fourth standards of § 302 apply to the Massachusetts defendants; nor could he—nothing in the record suggests that these defendants transact any business or contracts to supply goods within

---

[6]    Even if Brown had not conceded the issue, the Court would still find personal jurisdiction lacking under § 301. As discussed above, Brown's claim that, "[u]pon information and belief, the Massachusetts Defendants routinely extradite fugitives from the State of New York" fails to show a "regular" and "persistent course of conduct" under § 302. For the same reasons, this assertion—the only fact in the record that might bear on general jurisdiction—cannot satisfy § 301's similar (but perhaps even more rigorous) "continuous and systematic course of doing business" standard.

New York, have committed a tort within the state, or own, use, or possess real property in the state. *See* CPLR §302(1), (2), and (4). Instead, Brown relies solely on the third standard. As to it, he first contends that, by causing or contributing to his detention in New York, the Massachusetts defendants "committed a tort, the effects of which were felt in the State of New York." (Pl.'s Opp. at 9). He then claims these parties "engage in a persistent course of conduct within the State of New York" by "routinely extradit[ing] fugitives from the State of New York." (*Id.*). Upon these allegations, Brown argues he has satisfied the requisite elements of §302(3)(i).

Brown's jurisdictional argument misses the mark. Even assuming, *arguendo*, he could show as a *prima facie* matter that the Massachusetts defendants had committed a tort against him, Brown fails, as a matter of law, to establish that these parties "regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered" in New York. CPLR § 302(3)(i). For this reason, there is no personal jurisdiction over the Massachusetts defendants.

Other than alleging that the Massachusetts defendants routinely initiate requests on behalf of the Commonwealth of Massachusetts calling upon New

York authorities to extradite detainees to Massachusetts,[7] Brown makes no allegations supporting personal jurisdiction over those defendants. Nowhere else in his complaint, brief, or declaration does plaintiff assert any facts whatsoever indicating that the Massachusetts defendants partake in or regularly do or solicit business in New York; nor does he claim that they derive any revenue from goods used or consumed, or services rendered, in New York.

Brown's assertions regarding Massachusetts's extradition policy simply do not amount to a showing of a "persistent course of conduct" in New York on the part of the Massachusetts defendants. Even if these defendants did, in fact, routinely seek extradition to Massachusetts of fugitives from justice, this long-distance interaction between sovereigns is not the same as persistent conduct "in" the state of New York. The necessary communication with New York justice officials matters not. Brown cites no cases holding that "routine"

---

[7]  Specifically, plaintiff alleges that these defendants engage in a "persistent course of conduct" because, "[u]pon information and belief, the Massachusetts Defendants routinely extradite fugitives from the State of New York." (Pl.'s Opp. (Dkt. No. 32) at 10). In support, he points to the fact that the Berkshire DA stated in the NCIC validation/entry for the Massachusetts warrant that it would seek extradition of Brown from New York (see Pl.'s Opp. (Dkt. No. 32) at 10 (citing DePaul Decl., Exh. B at 2)), and cites a printout of an internet article stating that Pittsfield police were seeking extradition of two robbery suspects from New York. (Brown Decl. (Dkt. No. 31) at PDF p. 10).

extradition requests by officials in another state constitutes the kind of "continuous and systematic course of doing business" contemplated by § 302. Moreover, the only facts Brown cites in support of his "routine extradition" claim are that the Berkshire DA's office on *one* occasion sought to extradite him from New York, and that the Pittsfield Police Department on *one* occasion sought to extradite robbery suspects from New York. There is simply no showing of persistent conduct by the Massachusetts defendants in New York.

By contrast, the declarations provided by the Massachusetts defendants and/or their agents offer detailed reasons why these parties do not engage in a persistent course of conduct in New York. In his declaration, Chief Wynn states that he is not a resident or domiciliary of New York, does not conduct any business in New York, has never applied for a business license or permit here, owns no real or personal property in the state, maintains no offices, agents or bank accounts here, has never paid taxes here, has never had a telephone listing or mailing address in the state, and conducts all of his personal and professional business in Massachusetts. (*See* Wynn Decl. (Dkt.

No. 24) ¶¶ 1-6). Berkshire DA Capeless makes essentially identical assertions in his declaration. (*See* Am. Capeless Decl. (Dkt. No. 39) at ¶¶ 1-8).[8]

Furthermore, Linda Tyler, the Pittsfield City Clerk, asserts in her declaration that Pittsfield conducts no business or manufacturing in New York, has no agents, real or personal property, bank accounts or mailing addresses here. (Tyler Decl. (Dkt. No. 25) ¶¶ 1-5). Finally, Kathleen Degnan, the Pittsfield City Solicitor, declares that Pittsfield and Chief Wynn "have no authority to decide whether or not to initiate extradition proceedings between the Commonwealth of Massachusetts and the State of New York," and had no "involvement in the decision whether or not to initiate extradition proceedings" with regard to Brown. (Degnan Decl. ¶¶ 1-4). Brown fails to rebut any of these allegations. Accordingly, he has failed to establish that § personal jurisdiction exists over the Massachusetts Defendants.

---

[8]  Although Brown objects that Capeless's original declaration lacks probative value since it was neither sworn to nor declared under penalty of perjury, (*see* Pl.'s Opp. at 6; Orig. Capeless Decl. (Dkt. No. 35)), Capeless's amended declaration is properly submitted under penalty of perjury, in compliance with 28 U.S.C. § 1746. (*See* Am. Capeless Decl.). In support, he out that the Berkshire DA stated in the NCIC validation/entry for the Massachusetts warrant that it would seek extradition of Brown from New York (*see* Pl.'s Opp. (Dkt. No. 32) at 10 (citing DePaul Decl., Exh. B at 2)), and cites a printout of an internet article stating that Pittsfield police were seeking extradition of two robbery suspects from New York. (Brown Decl. (Dkt. No. 31) at PDF p. 10).

The story does not end here. The Court declines to dismiss outright all claims againt the Massachusetts defendants. But, because the Court does not address the merits of Brown's claim in its jurisdictional disposition, and because dismissal may render time-barred Brown's otherwise timely claims, the Court finds that the interests of justice would be best-served by a transfer of venue rather than outright dismissal. Accordingly, the motion of the Massachusetts defendants is granted to the extent that, pursuant to 28 U.S.C. § 1406(a), the Court transfers all claims against the Massachusetts defendants to the United States District Court for the District of Massachusetts. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (holding that § 1406(a) permits a court to transfer claims to another venue even if the transferring court lacks personal jurisdiction over the defendants).

## B. Failure to State a Claim Against the New York Defendants

### i.   *42 U.S.C. § 1981*

Brown pleads causes of action against Sgt. Hogan and the Queens DA for violations of 42 U.S.C. § 1981. (*See* Am. Compl. at ¶¶ 18-25). This statute guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). As such, "[t]o state a claim under § 1981 there must be a contractual relationship." *Sutherland v. N.Y. State Dept. of Law*, No. 96-Civ-6935 (JFK), 1999 WL 314186, at * 10

(S.D.N.Y. May 19, 1999); *see also Krulik v. Bd. of Educ. of N.Y.C.*, 781 F.2d 15, 23 (2d Cir. 1986) ("On a claim under § 1981, a plaintiff must show both that he was subjected to intentional discrimination, and that this discrimination interfered with a contractual relationship.") (internal citations omitted). Nowhere in his complaint, brief, or declaration does Brown allege or even hint he could allege the existence of any contractual relationship that might implicate § 1981. The Court therefore dismisses all claims brought under that statute.

### ii.  *42 U.S.C. § 1983 Claims Against Sgt. Hogan*

Browns asserts § 1983 claims against Sgt. Hogan for false arrest, false imprisonment, and failure to intervene on his behalf and protect him from unconstitutional treatment. (*See* Am. Compl. ¶¶ 18-20). "Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Although individual state officials may be liable under § 1983 in their personal capacities, they may assert an affirmative defense of qualified immunity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Southerland v. City of New York*, 680

21

F.3d 127, 141 (2d Cir. 2012) (internal quotations omitted). "A right is 'clearly established' when . . . a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotations omitted). As for the act or failure to act itself, an officer's actions are "objectively reasonable" if "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Id.* (internal quotations omitted).

"The elements of false arrest . . . under § 1983 are substantially the same as the elements under New York law." *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003) (internal quotations omitted). In New York, a plaintiff claiming false arrest or false imprisonment (which are "two names for the same tort," *Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 844-45, 935 N.Y.S.2d 583, 589 (2d Dep't 2011)), must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Petrychenko v. Solovey*, 99 A.D.3d 777, 780, 952 N.Y.S.2d 575, 578 (2d Dep't 2012) (internal quotations omitted). "A plaintiff cannot prevail on causes of action based upon false arrest and false imprisonment . . . if the arresting officers had probable cause to believe that the plaintiff committed the underlying offense." *Id.* (internal quotations omitted). Therefore, "[t]he pivotal issue in the present case is the presence, or

22

absence, of probable cause . . . If there was probable cause for the arrest, then a false arrest claim will fail." *Boyd*, 336 F.3d at 76.

Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir. 1993) (internal quotations omitted). "When an arrest is made pursuant to a facially valid warrant, there is a presumption that it was made with probable cause which can be rebutted only by a showing of fraud, perjury, or the misrepresentation or falsification of evidence." *Garenani v. Cnty. of Clinton*, 552 F.Supp.2d 328, 333 (N.D.N.Y. 2008) (internal quotations omitted). Furthermore, if officers arrest an individual based on a mistaken identification, that arrest is still constitutionally valid if: (1) the police had probable cause to arrest the person sought; and (2) the arresting officer reasonably believed that the arrestee was that person. *Martinez v. N.Y.C.*, 340 Fed. App'x 700, 701 (2d Cir. 2009) (citing *Hill v. California*, 401 U.S. 797, 802-03 (1971)).

The record makes abundantly clear that Sgt. Hogan had probable cause to arrest Brown and detain him pursuant to the Massachusetts warrant. This is so even assuming (as the Court must) that plaintiff is not the same Vincent Brown as the individual being sought in the warrant. First, in asserting a "you

23

got the wrong guy" claim, plaintiff need not and does not challenge the facial validity of the Massachusetts warrant. The key question is whether Sgt. Hogan reasonably believed plaintiff was the same Vincent Brown as the one named in the warrant. As Sgt. Hogan stated in the criminal information he drafted, he confirmed that Brown's name, FBI number, and Social Security number matched those of the suspect described in the warrant posted in the NCIC database.[9] (DePaul Decl., Exhs. B at 2, C, F).[10] *See Vasquez v. McPherson*, 285 F.Supp.2d 334, 341 (S.D.N.Y. 2003) (collecting cases demonstrating that officers may generally rely on information in the NCIC database when identifying a suspect). This is an ample basis for an officer to reasonably identify Brown as the person named in the warrant. *See, e.g.,*

---

[9]   In their brief, the New York, defendants also assert that the officers relied on Brown's race and date of birth, both of which matched the information provided in the warrant. (*See, e.g.*, NY Defs.' Mem. at 5). Because these facts are not directly reflected in the documents on which a court may rely for the purposes of deciding the 12(b)(6) motion, the Court will not consider these additional facts. In any event, it is a moot point, since the Court finds that the officers had a reasonable basis for identifying Brown as the fugitive suspect on the facts that may be considered.

[10]   Exhibit F of the DePaul Declaration is the "Designation of Agent for Access to Sealed Records Pursuant to New York CPL 160.50[1][d]," which Brown executed on August 3, 2010. The last four digits of the Social Security number Brown provides in this document match those that appear in the Massachusetts warrant. (*See* DePaul Decl., Exh. B at 2). Although the rest of the digits are redacted, Brown does not challenge the New York defendants' assertions that the two Social Security numbers match in their entirety.

*Vasquez*, 285 F.Supp.2d at 341 (identical names, descriptions, and dates of birth supplied probable cause for arrest in the case of mistaken identity based on information in a warrant); *Martinez*, 340 Fed. App'x at 701 (matching names and dates of birth provided probable cause, in spite of differences in skin tone, height, and weight from plaintiff's physical appearance). In harmony with these precedents, the Court holds that, as a matter of law, the officers had probable cause to arrest and detain Brown based on matching names, Social Security numbers, and FBI numbers.

Plaintiff contends that Sgt. Hogan and other New York defendants should have further investigated his identity by comparing the Queens arrest photograph of him to the Massachusetts arrest photograph of the Vincent Brown named in the warrant. This argument fails to persuade. First, Brown offers no facts showing that a Massachusetts arrest photograph even exists, or that the individual named in the warrant was ever arrested in the first place. Second, once an officer has reasonable basis to make an arrest, he need not "investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

Hence, in *Martinez*, 340 Fed. App'x at 701, the Second Circuit held that, in a case of a detention based on mistaken identity, while "officers arguably

25

could have fingerprinted plaintiff, or otherwise investigated his claim of mistaken identity, they were not constitutionally required to do so" after they had established probable cause for the initial arrest. *See also Juan Martinez v. N.Y.C.,* No. 06-Civ.-5671 (WHP), 2008 WL 2566565, at *3 (S.D.N.Y. June 27, 2008) (finding that it was "reasonable for the Officers not to believe" a suspect's protestations of mistaken identity, although they later proved true); *Sanchez v. Port Auth. of N.Y. & N.J.,* 08-CV-1028 RRM CLP, 2012 WL 1068078 (E.D.N.Y. Mar. 29, 2012) (holding similarly). Simply put, in the absence of evidence above and beyond the detainee's objections, "[a]rresting officers . . . are not required to investigate a claim of innocence—even a claim of innocence that is based on mistaken identity." *Martinez,* 340 Fed. App'x at 701. Sgt. Hogan did not violate Brown's rights by failing to search for a potentially exculpatory arrest photograph from Massachusetts that may or may not have existed. Probable cause existed for his arrest and detention, and Sgt. Hogan is shielded from false arrest or false imprisonment claims under § 1983.

Finally, Brown's § 1983 claim against Sgt. Hogan for failure to intervene on his behalf and protect him from unconstitutional treatment fails to pass muster. To state such a claim, a plaintiff must show that the defendant observed or had reason to know "that (1) that excessive force [was] being

used; (2) that a citizen ha[d] been unjustifiably arrested; or (3) that any constitutional violation ha[d] been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). None of these three scenarios applies to this case. To start, Brown does not allege that excessive force was applied against him by anyone. Next, as discussed above, his arrest was supported by probable cause. Third, there is no indication that Sgt. Hogan knew or had reason to know that any constitutional violations against Brown had been committed. He lawfully arrested Brown, drafted a criminal information against him on the basis of the same probable cause that supported his arrest, and appears to have had nothing further to do with the matter. Neither Sgt. Hogan nor any other officer had a constitutional responsibility to continue investigating Brown's identity upon matching his name, Social Security number, and FBI number to the information contained in the NCIC database. Accordingly, Brown's § 1983 claim against Sgt. Hogan for failure to intervene fails as a matter of law.

### iii.   *§ 1983 Claims Against the Queens DA*

The complaint targets more than Sgt. Hogan and his NYPD colleagues. Brown also sues the Queens DA under § 1983 for false arrest and false imprisonment. (*See* Am. Compl. ¶¶ 21-25). Although he purportedly brings suit against this defendant in both his official and personal capacities, official

capacity suits seeking damages against District Attorneys in New York are barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529-30, 535-36 (2d Cir. 1993) (official capacity suits against District Attorneys and Assistant District Attorneys barred under the Eleventh Amendment); *Eisenberg v. Dist. Attorney of Cnty. of Kings*, 847 F.Supp. 1029, 1035 (E.D.N.Y. 1994) (dismissing official capacity § 1983 claim against the Kings County DA on Eleventh Amendment grounds). Accordingly, Brown may only bring a personal capacity suit against the Queens DA, which requires a showing of the named defendant's personal involvement in plaintiff's injuries. *See, e.g., Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). To show personal involvement, Brown must plead facts demonstrating the Queens DA's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 753 (2d Cir. 2003).

28

Brown's complaint (and, indeed, the record as a whole) is entirely devoid of facts bearing on any of the four possible circumstances described in *Hayut*. First, there are no facts suggesting that any of the Queens DA's subordinates acted unlawfully in his case, despite having allegedly detained the wrong Vincent Brown with the intention of facilitating his extradition to Massachusetts. Even if Brown could show that unlawful actions *had* occurred (and nothing suggests he can), he pleads no facts showing that the Queens DA learned about these actions and failed to correct them. Nor are there facts . or the suggestion that such facts might exist, demonstrating that this defendant was "deliberately indifferent" to information regarding potentially unlawful actions by subordinates who were handling Brown's case, or that he was "grossly negligent" in supervising those subordinates. Finally, nothing in the record points to "a policy or custom" orchestrated by the Queens DA that fostered the supposedly unlawful conduct charged in the complaint. *See, e.g., Connick v. Thompson*, 131 S. Ct. 1350, 1360-64 (2011) (holding that deliberate indifference could not be shown by single unlawful incident by an Assistant DA); *Newton v. N.Y.C.*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) ("[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State.") (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 831 (1985)).

Since he cannot sue the Queens DA in his official capacity, and fails to plausibly plead facts in his amended complaint necessary to state a claim against the Queens DA in his personal capacity, Brown's § 1983 claim against the Queens DA is dismissed.

### iv. Monell *Liability*

Beyond the individual New York defendants, Brown brings a claim for § 1983 *Monell* liability against New York City. (*See* Am. Compl. ¶¶ 35-38). A § 1983 cause of action against a municipality cannot be premised on *respondeat superior. See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). Instead, a plaintiff suing a city under § 1983 must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)). *See also Roe*, 542 F.3d at 36 ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.").

Under *Monell*, an actionable municipal policy or custom exists in the following circumstances:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Bliven v. Hunt*, 478 F.Supp.2d 332, 336-37 (E.D.N.Y. 2007) (citing *Moray v. City of Yonkers*, 924 F.Supp. 8, 12 (S.D.N.Y.1996)). If a plaintiff seeks to show a city policy by referring to only a single act, that act must have been committed by a city official "responsible for establishing final policy with respect to the subject matter in question," and must represent a deliberate and considered choice  among competing alternatives. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986). If the plaintiff challenges what he claims is an unofficial custom or practice of the city, he must show that the practice is "so widespread as to have the force of law." *Id.* (quoting *Bd. of Cnty. Comm'rs*, 520 U.S. at 404). The custom "need not [have] receive[d] formal approval by the appropriate decision-maker . . . [but] plaintiff must prove . . . that [it] is permanent." *Davis v. N.Y.C.*, 228 F.Supp.2d 327, 337 (S.D.N.Y. 2002) (internal citations omitted).

Plaintiff has made nowhere near the kind of factual pleading needed to avoid dismissal of his *Monell* claim against New York City. There are no facts in the record, much less the complaint, revealing or even hinting at a pattern—either through official policy or unofficial custom or practice—of unconstitutional activity by NYPD, the Queens DA, or any other agent or employee of New York City. Brown's sole allegation concerns a single act: his allegedly wrongful detention based on a mistaken identity, incorporated into the criminal information filed by Sgt. Hogan. He has pleaded no facts showing that this decision resulted from the considered deliberations of officials with final policymaking responsibility, conscious of the unconstitutional implications of their actions. Nor has he offered facts in or beyond his pleadings indicating that his detention resulted from such grossly negligent supervision as to manifest "deliberate indifference" to his rights. There is simply no plausible claim for *Monell* liability based on the pleadings or in the record before the Court. The *Monell* claim against New York City is dismissed.

v.   *Remaining Federal Claims*

Although he does not adequately plead them in his Amended Complaint, Brown appears in his opposition brief to assert claims under § 1983 for unlawfully prolonged detention and malicious prosecution. (*See, e.g.,*

Pl.'s Opp. at 1 ("Plaintiff submits that even assuming arguendo that probable cause initially existed for Plaintiff's arrest—the continued detention of the Plaintiff was unlawful and actionable under federal and state law.") and 4-5 (outlining malicious prosecution claim against Sgt. Hogan and the Queens DA)). Because these claims were not clearly included in the complaint, they cannot now be considered by the Court and are dismissed for that reason. *See DePasquale v. DePasquale*, No. 12–CV–2564 (RRM) (MDG), 2013 WL 789209, at *10 n.6 (E.D.N.Y., Mar. 1, 2013) ("Plaintiff cannot use their opposition to the motion to dismiss to raise new claims or arguments, and thus the Court does not address the new argument made in the plaintiff's memorandum.") (internal quotations omitted); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

In any event, and though not required, if the Court were to read Brown's Amended Complaint liberally and construe it to include these claims under the rubric of § 1983, they would still fail. Clearly, there are no facts in pleadings to s upport a claim for unlawfully prolonged detention, nor does the record suggest such facts exist. On the contrary, the record points to the futility of such a claim. To be sure, the "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of

33

a certain amount of time deprive the accused of 'liberty . . . without due process of law.'" *Baker*, 443 U.S. at 145. Still, a plaintiff cannot succeed on such a claim unless he shows "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007). Not only does Brown fail to demonstrate that any defendant mishandled or suppressed exculpatory evidence, there is not even a whisper of evidence suggesting the kind of "malicious and sadistic abuses of power by government officials, intended to oppress or to cause injury" that would "shock the conscience." *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 252 (2d Cir. 2001). This claim fails on its face, and given Brown's account of his plight in his pleadings and motion papers, the failure is irremediable.

Plaintiff's malicious prosecution claim fares no better, for it too lacks factual support in the pleadings and the broader record, which together show that amendment would be futile . To sue under this cause of action, a plaintiff in the Second Circuit must "demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir. 2003).

34

Under New York law, a plaintiff asserting a malicious prosecution claim must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.1996) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82, N.E.2d 1248, 1250, 468 N.Y.S.2d 453, 455 (1983)).

As discussed earlier, the New York defendants had probable cause to arrest and detain Brown under the Massachusetts warrant. While a plaintiff may show that probable cause dissipated after existing at the time of the initial arrest, he must demonstrate that defendants became aware of new exculpatory evidence, *see Callan v. State*, 73 N.Y.2d 731, 732, 532 N.E.2d 96, 535 N.Y.S.2d 590 (1988), or that they failed to make further inquiries into his potential innocence when a reasonable person would have done so. *See Colon*, 60 N.Y.2d at 82. Neither situation applies here. Nothing in the record, which details the facts and circumstances of Brown's 80-day detention, indicates that Brown can allege, and he certainly has not already pleaded, that any New Yirk defendant knew that Brown was not the person named in the Massachusetts warrant. Given the strong confirmatory evidence defendants had gathered—identical names, Social Security numbers, and FBI numbers—

35

a reasonable person would not have deemed it necessary to seek more confirmation still. The only fact in the pleadings and record pointing in the other direction is Brown's naked assertion that, notwithstanding the information stated on the face of the warrant, the New York defendants had arrested the wrong Vincent Brown.

Other potential streams of relief are equally dry. Brown points to no facts suggesting that any of the individual New York defendants acted with "actual malice" in prosecuting the fugitive case against him, as he must to state such a claim. *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502, 377 N.E.2d 975, 406 N.Y.S.2d 443 (1978). "Actual malice means that a defendant must have commenced the prior criminal proceeding due to wrong or improper motive, something other than a desire to see the ends of justice served." *Id.* There is nothing whatsoever in the facts before the court indicating that these defendants prosecuted and detained Brown out of anything other than a good-faith belief that Brown was the person named in the Massachusetts warrant. Although Brown makes much of the fact that the Queens DA sought to detain him beyond the initial 30-day period for a defendant awaiting extradition, this fact does not establish—or even suggest—malice. Indeed, as Brown himself admits, under CPL § 570, "if the accused is not arrested under a warrant of the [out-of-state] governor after 30 days – he may be recommended for a

36

further period of up [to] sixty days." (Pl.'s Opp. at 3). The Queens DA was acting fully within the statutorily prescribed guidelines by renewing his request that Brown remain in custody pending extradition; plaintiff has revealed no facts to support a finding of malice. Significantly, given what Brown has claimed in his pleadings and motion papers, it is clear that any amendment to plead otherwise would be futile as well.

For these reasons, Brown fails to state a cause of action for malicious prosecution under § 1983. This claim, like all of Brown's federal claims against the New York Defendants, is dismissed.[11]

### vi.    *State Law Claims Against the New York Defendants*

In addition to his federal causes of action, Brown advances state law claims against various permutations of defendants for false arrest, false imprisonment, negligent infliction of emotional distress, and negligent hiring, screening, retention, supervision and training. (See Am. Compl. at ¶¶ 26-34,

---

[11]  Furthermore, it is likely that the Queens DA would be shielded from suit under the doctrine of absolute prosecutorial immunity. Nearly every court that has addressed the issue has held that a prosecutor's decision to initiate extradition proceedings falls within the scope of duties for which a prosecutor enjoys absolute immunity. *See Uribe v. Cohen*, No. 04-cv-1723 (CFD), 2006 WL 2349567, at *3 (D. Conn. Aug. 3, 2006) (collecting cases). However, since the Second Circuit has not squarely addressed this issue, and because Brown's claims would fail on the merits in any event, the Court declines to rest its principal holding on the ground of prosecutorial immunity. Nonetheless, the Court notes that it does conclude that prosecutorial immunity is applicable in this case, and that the claims against the Queens DA are dismissed for that reason, too.

39-41). "Supplemental jurisdiction is traditionally 'a doctrine of discretion, not of plaintiff's right.'" *TPTCC NY, Inc. v. Radiation Therapy Serv., Inc.*, 453 F.App'x 105, 106 (2d Cir. 2011) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). "Thus, a district court may decline to exercise supplemental jurisdiction if it 'has dismissed all claims over which it has original jurisdiction.'" *TPTCC NY, Inc.*, 453 F.App'x at 105 (quoting 28 U.S.C. § 1367(c)). The Court having dismissed all of Brown's federal claims, it declines to exercise supplemental jurisdiction over the remaining state claims, and dismisses them as well. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (noting that it may be an abuse of discretion to retain supplemental jurisdiction over state law claims after all federal claims have been dismissed). These claims are dismissed without prejudice, except as to the effect that the doctrine of collateral estoppel may have upon them, and with leave to replead them in good faith in a state court of appropriate jurisdiction within 30 days of the entry of this Order on the docket

## Conclusion

All federal claims against the New York defendants are dismissed with prejudice. The Court declines to exercise its supplemental jurisdiction as to the state law claims brought against New York defendants, which are dismissed without prejudice, save for the collateral estoppel effects of this

Order, and with 30 days leave to replead in a state court of appropriate jurisdiction. The Clerk of Court is directed to enter judgment in accordance with this Order in favor of the New York defendants.

After entry of that partial, final judgment, the Clerk of Court is directed to transfer the action against the remaining Massachusetts defendants to the United States District Court for the District of Massachusetts and then to close this docket.

So Ordered.

s/Eric N. Vitaliano

**ERIC N. VITALIANO**
**United States District Judge**

Dated: Brooklyn, New York
        June 13, 2013